**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

--------------------------------------------------------

VIRTU KCG HOLDINGS LLC and VIRTU :
AMERICAS LLC,                    :
                                 :    Civil Action No. _____
                Plaintiffs,      :
                                 :    *Document electronically filed*
                                 :
          v.                     :
                                 :
MIN LI,                          :
                                 :
                Defendant.       :
                                 :

--------------------------------------------------------

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiffs Virtu KCG Holdings LLC and Virtu Americas LLC (collectively, "KCG" or "Plaintiffs"), by and through their undersigned attorneys, allege as follows for this Complaint against Defendant Min Li ("Li" or "Defendant"):

1.     KCG brings this action for violations of the Defend Trade Secrets Act of 2016 ("DTSA"), violations of the New Jersey Trade Secrets Act regarding the misappropriation of trade secrets, breach of contract, and violations of the Computer Fraud and Abuse Act ("CAFA"). Defendant Li failed to comply with certain promises he made and obligations he owed to KCG, and violated federal and New Jersey state law with respect to the use, retention, and disclosure of his former employer, KCG's, confidential and proprietary trade secrets. Specifically, before his termination from KCG and around the time he was meeting with one of KCG's competitors, Defendant Li:

- improperly and illegally accessed, used, reviewed and/or copied to locations under his control, proprietary trading models created by other KCG employees that he had no right to access, let alone review or copy;

- undertook these actions around the same time as he was taking meetings with one of KCG's competitors; and

- prior to his termination from KCG, took actions to conceal and disguise the fact that he had accessed, reviewed, and copied KCG's proprietary information by hiding those files from other users.

Defendant Li's actions were undertaken in blatant disregard of both his KCG employment agreement ("Employment Agreement") and KCG's employee guidelines, policies and procedures, which prohibited Li from accessing, copying, viewing and using certain proprietary information. Defendant Li's actions were not done in the performance of his duties on behalf of KCG, but instead were done for an improper purpose. Those actions threaten exposure of KCG's confidential trade secret and other proprietary information to the public and/or one of KCG's competitors. Further, it is highly probable, if not certain, that Defendant Li will inevitably disclose KCG's proprietary information and trade secrets to KCG's competitors.

2.     Consequently, Defendant Li violated federal and state protections against the misappropriation of trade secrets, and breached his KCG Employment Agreement, by accessing, reviewing, and copying certain proprietary information. KCG now seeks (a) injunctive relief enjoining Li from using or disclosing KCG trade secrets and from engaging in the activities set forth in paragraph 3 of the WHEREFORE clause of this Complaint; (b) an order for Li to return all KCG's trade secrets in his possession, custody, or control to KCG; (c) an award of damages to KCG for his illegal and improper actions; (d) an award of a reasonable royalty to KCG for his misappropriation of KCG's highly confidential information and trade secrets; and (e) an award to KCG for its costs and expenses incurred in investigating and remediating Li's unauthorized access and abuse of KCG's computer networks.

## THE PARTIES

3.     On or about July 20, 2017, KCG Holdings, Inc. merged with and into a subsidiary of Virtu Financial, Inc. The surviving entity was reclassified into an LLC and renamed Virtu KCG Holdings LLC.

4.     KCG Holdings, Inc. was a Delaware Corporation with its principal place of business at 300 Vesey Street, New York, New York 10282. Virtu KCG Holdings LLC is a Delaware Limited Liability Company with its principal place of business at 300 Vesey Street, New York, New York 10282.

5.     As a result of the merger, KCG Americas LLC's name was changed to Virtu Americas LLC. KCG Americas LLC was, and still is, a Delaware limited liability company with its principal place of business at 300 Vesey Street, New York, New York 10282.

6.     Defendant Li is a citizen of the State of New Jersey and resides at 20 Newport Parkway, Apartment 501, Jersey City, New Jersey 07310.

7.     Because KCG Americas LLC employed Li and his termination occurred before the July 20, 2017 merger, and because Plaintiffs are the successors in interest of the KCG entities identified herein, Plaintiffs refer to KCG throughout this Complaint hereinafter for ease of reference, but Virtu KCG Holdings LLC and Virtu Americas LLC remain the proper Plaintiffs.

## JURISDICTION AND VENUE

8.     The Court has original jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves claims arising under the laws of the United States, the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832, *et seq.* and the Computer Fraud and Abuse Act Claim, 18 U.S.C. § 1020, *et seq.*  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different states and the amount in controversy in this matter

exceeds $75,000.00.  This Court also has supplemental jurisdiction over KCG's remaining claims pursuant to 28 U.S.C. § 1367 because all of KCG's claims are so related that they form part of the same case or controversy.

9.     This Court has personal jurisdiction over Defendant because he is a resident and citizen of this District.  The Parties have also "each consent[ed] to the jurisdiction" of "any State or Federal court located in the State of New Jersey[.]"  *See* Employment Agreement, attached hereto as Exhibit A ("Ex. A"), at ¶ 12(b)-(d).

10.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), because Defendant Li resides in this District.  Venue in this Court is also proper because the parties, through the Employment Agreement, expressly contracted for lawsuits involving claims of misappropriation of trade secret and confidential information, and breach of the restrictive covenants, to proceed in a state or federal court in New Jersey.  *See* Ex. A at ¶ 12(b)-(d).

## BACKGROUND

11.     KCG engages in proprietary algorithmic trading and electronic market making. KCG electronically buys and sells financial instruments in several asset classes in order to provide two-sided markets on exchanges and trading platforms throughout the world.

12.     KCG's technology, which is highly confidential and proprietary, allows KCG to perform its business around the world and through exchanges and other trading platforms that are computer-based and accessed through computers.

13.     In addition to its technology, KCG's confidential information also includes, among other things, financial and business plans and strategies; client lists; economic, engineering and design information; software; algorithms; mathematical and valuation models;

trading models and strategies; trading and hedging strategies and paradigms; and proprietary computer codes and computer and network hardware and configurations.

14.     KCG protects the confidential information described in paragraphs 12 and 13 by, among other things: limiting the disclosure and use of this information to only the KCG employees who need this information to perform their duties on behalf of KCG; developing and implementing policies and procedures regarding the use and protection of confidential information; educating its employees about the requirements and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and requiring employees to execute written agreements that protect against the misuse and improper disclosure of KCG's confidential information. KCG developed this information at great expense, not only by paying highly trained professionals including developers, traders and quantitative analysts to develop its technology and trading models, but by investing substantial sums of money into developing its client relationships.

15.     Consequently, Li agreed in his Employment Agreement and through his acknowledgement of various Company policies that he would not access a code, access a file or retrieve any stored communication, other than as authorized by KCG to perform his job duties, without prior clearance from KCG, that he would not disclose confidential information to anyone not authorized to receive it, that he would not use KCG confidential information for his own benefit or for any improper purpose, and that he would not remove KCG's electronic confidential and proprietary information from KCG's electronic systems.

**Li's Employment with KCG**

16.    On or about December 19, 2013, KCG hired Li to be a Vice President, Quantitative Strategist. On or about January 15, 2014, Li signed the Employment Agreement with KCG. *See* Ex. A.

17.    As a condition of his employment with KCG, and because he was entrusted with KCG's most important and confidential information, Li expressly acknowledged and agreed in the Agreement that:

    a.  KCG is engaged in a diverse and evolving business and that the protection of its confidential information, competitive advantages, and intellectual property is critical for its collective success and the stability of KCG's workforce;

    b.  KCG is relying on Li to act with utmost fidelity and care to promote its interests;

    c.  In addition to the other duties and obligations specified in the Agreement, Li owes KCG an obligation that arises from his special relationship with KCG to protect KCG's confidential information, competitive advantages, and intellectual property;

    d.  In the course of his employment, Li would learn of and/or have access to Confidential Information, as that term was defined in the Agreement;

    e.  KCG has expended considered efforts and costs to develop its Confidential Information and other intellectual property, and to keep that property secret; and

    f.  KCG derives competitive advantages from using its Confidential Information and Developments and that any loss or erosion of those advantages is likely to have adverse consequences to KCG's business.

*See* Ex. A at 1, ¶ 1.

18.    In addition to acknowledging his access to confidential information, Li specifically agreed that such confidential information would include:

    financial, business, employee, technical, economic, engineering and design information, plans and strategies, forecasts, know-how, systems, processes, software, algorithms, mathematical models, valuation models, trading models or strategies, information relating to modeling relationships among interest rate market instruments, trading and hedging strategies and paradigms, firmware, trading

6

> technologies, the use of trading platform software (including all front-end, middleware and exchange connectivity components or subsystems and analysis and conclusions related to KCG's technology), proprietary computer code, and computer and network hardware and configurations.

*See* Ex. A at 5, ¶ 9(a).

19.    The information described in paragraph 18 is not generally known to the public, is used in the operation of KCG's business, and has considerable commercial value for KCG.

20.    As a result of Li's access to KCG's confidential information, and as a condition of employment with KCG, Li agreed that while employed by KCG, and at all times after his employment terminated for whatever reason, he would:

   a.  Hold all KCG confidential information as a fiduciary in trust and use it only for the benefit of KCG in properly performing his employment duties for KCG;

   b.  Maintain KCG confidential information in strict confidence and secrecy;

   c.  Not, except as specifically directed by KCG in performing his employment duties for KCG, communicate or disclose confidential information in any manner to any person within or outside KCG who is not authorized to know of such confidential information, or use confidential information; and

   d.  Comply with KCG's procedures on dealing with confidential information and in all events use his best efforts to prevent the inadvertent disclosure of confidential information.

*See* Ex. A at 5, ¶ 9(b).

21.    Li also agreed that he would only access and use KCG's confidential information in furtherance of his duties at KCG.  *See* Ex. A at 7, ¶ 11(b). In other words, Li agreed that he would only use that confidential information which was related to the tasks he was assigned at KCG, and that he was not permitted to access KCG's confidential information that he was not specifically authorized to access.

22.    Li also agreed that all electronic communication and electronic information stored on KCG's servers or other information systems was the property of KCG to be used for job-

related purposes. Li further agreed he would not use those systems or software for personal purposes contrary to KCG's interests and that he would not use a code, access a file or retrieve any stored communication, other than as authorized by KCG to perform his duties, without prior clearance from KCG. *See* Ex. A at 7, ¶ 11(b).

23.    Li also agreed to immediately return all KCG property upon the termination of his employment with KCG, including any KCG confidential information in his possession, custody, or control. *See* Ex. A at 6, ¶ 9(d); 7, ¶ 11(a).

24.    KCG employees, including Li, each have access to a copy of KCG's Employee Handbook, which prohibits employees from accessing, using and/or copying KCG's confidential trade secret information without authorization.

25.    Li also agreed that, if found in breach of any duty or obligation set forth in the Employment Agreement, including the duties and obligations he owed KCG with respect to KCG's confidential information and property, he would pay all costs and expenses, including attorneys' fees, which KCG incurred as a result of his breach. *See* Ex. A at 9, ¶ 13(d).

26.    Finally, Li agreed that, in the event that he breached his Employment Agreement, KCG would be entitled to injunctive relief without posting a bond or security. *See* Ex. A at 8, ¶ 13(c).

## Li's Exposure to KCG's Confidential Information

27.    KCG's Quantitative Strategists attempt to develop mathematical models that use information to, *inter alia*, forecast price movements in the markets ("Predictors"). The information used by the Predictors may include newspaper articles, public opinion polls, social media trends, trading volumes, exchange order book data, the prices of other securities, or theoretically any other piece of information. The types of information, combinations of

information and formulas used to create the forecasts are highly confidential. The forecasts that the Predictors provide are used by KCG to trade electronically. The electronic trading industry is highly competitive and developing successful Predictors provides a competitive advantage worth millions of dollars annually.

28.    As a Quantitative Strategist, Li was responsible – along with other KCG Quantitative Strategists – for developing and refining KCG's Predictors. The Predictors that Li helped to develop, and to which he had access, at KCG are some of KCG's most closely-guarded confidential and proprietary trade secrets. KCG maintains all of the Predictors developed by its Quantitative Strategists on its secure servers. Any employee with access to KCG's servers is required to sign an agreement containing a confidentiality clause, and information on the servers is password-protected. Moreover, the information on KCG's servers is segregated, with different levels of access for different employees. KCG's Quantitative Strategists are expected to only access the Predictors which they are specifically authorized to use.

29.    The U.S. Market-Making Business maintained a Departmental Directory on its servers within which employees could perform work and store information. Li, like all other KCG Quantitative Strategists, had a personal directory kept on KCG's servers. The personal directory for each Quantitative Strategist is an electronic folder that is used as a workspace for the Quantitative Strategists to perform work and store information related to their work. Quantitative Strategists use their personal directories as a repository for the information used to complete their duties for KCG.

30.    In addition to a Departmental Directory that contained personal directories like those used by Li, KCG also maintains other servers within which employees perform work and store information. One of those is the "build server," which is the computer facility that, among

other things, is used to compile computer code into software that is usable by production systems. Quantitative Strategists also maintain personal folders on the build server within which they perform work and store information. At any given time, these personal folders on the build server may contain confidential computer codes including Predictors already developed by KCG.

### Li Improperly Accessed KCG's
### Confidential Information and Then Tried to Conceal His Misconduct

31.    On April 6, 2017, Li met with an employee of a direct competitor of KCG.

32.    On April 8, 2017 and again on April 9, 2017, mere days after Li met with the employee of KCG's direct competitor, Li conducted google searches relating to that employee and relating to another former KCG Quantitative Strategist accused of and arrested for theft of KCG's proprietary computer codes.

33.    In or about April 2017, KCG was conducting an investigation into the theft of trade secrets by former KCG employee Zhengquan Zhang. As a result of the investigation of Zhang's activities, KCG discovered Predictors of other Quantitative Strategists stored in Li's personal directory on KCG servers.

34.    Following the discovery of the Predictors of other Quantitative Strategists stored in Li's personal directory, KCG conducted an investigation into Li's usage of and access to KCG's confidential and proprietary trade secret information.

35.    As part of its investigation, KCG discovered that Li had improperly accessed and copied Predictors written by other KCG employees.

36.    Specifically, Li accessed other Quantitative Strategists' personal directories, and copied information from those directories to his personal directory. Li identified and accessed Predictors which other Quantitative Strategists had developed and were developing for KCG,

and saved those files to his personal directory.  Li also sought to conceal his wrongdoing by hiding those files from other users.

37.    On April 27, 2017, KCG conducted an investigatory interview with Li, during which Li admitted that he had accessed and copied Predictors written by other KCG employees into his personal directory, which he made unreadable to other users, and that his conduct was unethical.

38.    Effective April 27, 2017, KCG placed Li on paid administrative leave pending the outcome of its investigation.  Li's employment with KCG was terminated effective July 5, 2017.

39.    Li was not authorized to access Predictors developed by other Quantitative Strategists and copy them to his personal directory. KCG authorized access to Predictors by specifically designating the names of those authorized to access the code by listing their names as being recipients of encryption keys within the Predictor files. Li was not a designated encryption key recipient for the Predictors he copied. Li accessing the Predictor source code of other Quantitative Strategists in the manner that he did was contrary to KCG's policies and procedures and not authorized by KCG or the Quantitative Strategists whose Predictors he copied.

40.    A significant amount of the work done by Quantitative Strategists is researching which events correlate to changes in market pricing. For instance, if KCG determines that the price of security X will go up or down when events A, B, and C occur (i.e., "Signals"), KCG creates mathematical formulas and computer code which allow its trading systems to take advantage of the correlations.  KCG spends considerable time and effort researching the statistical correlations between events and developing methodologies utilizing the correlations to

create price forecasts; thus, any individual with access to that information – including KCG's competitors – can see the end result of countless hours of research.

41.    Li was not authorized to access the Predictors which he accessed and copied. Merely by accessing, reviewing and/or copying these Predictors, Li could discover and memorize many of the ideas employed within the Predictors developed by other Quantitative Strategists. Given his skill level, having access to the work product of other Quantitative Strategists conveys a significant advantage to Li in being able to take these ideas and create similar Predictors at KCG's competitors.

42.    Li accessed and used the Predictors to, *inter alia*, enhance his employment prospects at KCG's competitors, and/or to enhance the compensation that a KCG competitor would offer or did offer to him.

43.    The confidential and proprietary information which Li accessed, reviewed and copied at KCG would be extremely valuable in the hands of a competitor. Upon information and belief, Li intends to disclose KCG's confidential information and specifically the Predictors which he wrongfully accessed at KCG – and thereafter tried to conceal – to a new employer.

44.    Even if Li does not intend to disclose KCG's confidential information to a new employer, whomever that may be, the fact that he will be working or will likely be working on the exact same types of Predictors makes his disclosure of KCG's confidential information regarding those Predictors inevitable.

## COUNT I
### (Violation of Defend Trade Secrets Act of 2016)
### (18 U.S.C. § 1832)

45.    KCG repeats and re-alleges each and every allegation contained in paragraphs 1 through 44 of the Complaint, as if fully set forth herein.

46.     During the course of his employment at KCG and in order to perform his duties on behalf of KCG, Li was granted access to KCG's confidential and proprietary information.

47.     Li had access to KCG's financial, business, employee, technical, economic, engineering and design information, plans and strategies, forecasts, know-how, systems, processes, software, algorithms, mathematical models, valuation models, trading models or strategies, information relating to modeling relationships among interest rate market instruments, trading and hedging strategies and paradigms, firmware, trading technologies, the use of trading platform software (including all front-end, middleware and exchange connectivity components or subsystems and analysis and conclusions related to KCG's technology), proprietary computer code, and computer and network hardware and configurations.

48.     This information is not available to the general public and is closely guarded by KCG.  KCG keeps such information strictly confidential in order to maintain an advantage in its highly competitive business.

49.     The information described above constitutes a protectable trade secret under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832 *et seq.*, because KCG derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.  18 U.S.C. § 1839.

50.     Li improperly accessed KCG's highly confidential Predictors developed by other KCG employees. Li misappropriated KCG's trade secrets, as prohibited by the DTSA, because he knowingly acquired them by improper means, *i.e.*, he improperly accessed files which he knew he was not authorized to access at all. 18 U.S.C. § 1839(5)(A).

51.     Accordingly, KCG requests that this Court enter an order permanently enjoining Li from using any KCG confidential information, from disclosing KCG confidential information to anyone not authorized to receive the confidential information, and enjoining Li from engaging in the conduct set forth in Paragraph 3 of the WHEREFORE clause at the conclusion of this Complaint.

52.     KCG also requests that this Court enter an order requiring Li to return any and all KCG confidential information to KCG, as provided by 18 U.S.C. §1836(3)(A)(ii).

53.     KCG further requests an award of compensatory damages under 18 U.S.C. §1836(3)(B), exemplary damages under 18 U.S.C. §1836(3)(C), because Li's misappropriation of KCG's trade secrets was willful and malicious, and attorneys' fees under 18 U.S.C. §1836(3)(D).

54.     KCG also requests an award equal to a reasonable royalty for Li's misappropriation of KCG's highly confidential information and trade secrets.

## COUNT II
### (Violation of Defend Trade Secrets Act of 2016)
### (18 U.S.C. § 1832)

55.     KCG repeats and re-alleges each and every allegation contained in paragraphs 1 through 54 of the Complaint, as if fully set forth herein.

56.     In addition to misappropriating KCG's trade secrets by knowingly acquiring them by improper means, Li also misappropriated KCG's trade secrets, in violation of the DTSA, by using KCG's trade secrets without express or implied consent (after having used improper means to acquire knowledge of the trade secrets). 18 U.S.C. § 1839(5)(B).

57.     Li reviewed KCG's trade secrets, copied them, and saved them to his personal directory in violation of his Employment Agreement and KCG policy and procedures.

58.    Under 18 U.S.C. § 1836(3), this Court may grant injunctive relief to prevent any actual or threatened misappropriation of trade secrets.

59.    Li's illegal and wrongful accessing, reviewing and copying of KCG's confidential information, combined with his attempts to conceal these activities and his meetings with KCG's direct competitor, constitutes the "threatened" misuse of KCG trade secrets.  Injunctive relief is therefore appropriate.

60.    Additionally, it is inevitable that Li will use KCG's highly confidential information and trade secrets based on his knowledge and misappropriation of them as described herein. Li has already met with one of KCG's competitors, and upon information and belief is actively seeking employment with KCG's other competitors, at which the knowledge about KCG's highly confidential information and trade secrets that he purloined from KCG will inevitably be used by him to his and his new employer's advantage.

61.    Accordingly, KCG requests that this Court enter an order permanently enjoining Li from using any KCG confidential information, from disclosing KCG confidential information to anyone not authorized to receive the confidential information, and enjoining Li from engaging in the conduct set forth in Paragraph 3 of the WHEREFORE clause at the conclusion of this Complaint.

62.    KCG also requests that this Court enter an order requiring Li to return any and all KCG confidential information to KCG, as provided by 18 U.S.C. §1836(3)(A)(ii).

63.    KCG further requests an award of compensatory damages under 18 U.S.C. §1836(3)(B), exemplary damages under 18 U.S.C. §1836(3)(C), because Li's misappropriation of KCG's trade secrets was willful and malicious, and attorney's fees under 18 U.S.C. §1836(3)(D).

64.    KCG also requests an award equal to a reasonable royalty for Li's misappropriation of KCG's highly confidential information and trade secrets.

## COUNT III
### (Breach of Contract)

65.    KCG repeats and realleges each and every allegation contained in paragraphs 1 through 64 of the Complaint, as if fully set forth herein.

66.    On or about January 5, 2014, Li entered into an Employment Agreement with KCG a true and correct copy of which is attached hereto as Exhibit "A."

67.    Under the terms of his Employment Agreement, Li promised to:

a.    Hold all KCG confidential information as a fiduciary in trust and use it only for the benefit of KCG in properly performing his employment duties for KCG;

b.    Maintain KCG confidential information in strict confidence and secrecy;

c.    Not, except as specifically directed by KCG in performing his employment duties for KCG, communicate or disclose confidential information in any manner to any person within or outside KCG who is not authorized to know of such confidential information, or use confidential information; and

d.    Comply with KCG's procedures on dealing with confidential information and in all events use his best efforts to prevent the inadvertent disclosure of confidential information.

*See* Ex. A at 5, ¶ 9(b).

68.    KCG has fully performed all of its duties and obligations under Li's Employment Agreement.

69.    Li breached his KCG Employment Agreement by illegally and wrongfully accessing, reviewing, and copying KCG's confidential information being developed by other Quantitative Strategists – confidential information which Li was not authorized to access as part of his duties at KCG. Li then compounded that breach by concealing such misconduct. This was in violation of his contractual promise to, among other things, "[h]old all Confidential

Information as a fiduciary in trust and use it only for the benefit of KCG in properly performing [his] employment duties for KCG" and to "[c]omply with KCG's procedures on dealing with Confidential Information…". *See* Ex. A at 5, ¶ 9 (b)(i)-(iv); 7 ¶ 11(b)

70.     Li's breaches of his KCG Employment Agreements have harmed KCG by placing KCG's most confidential and proprietary trade secret information at risk of disclosure to the public and/or KCG's competitors. The disclosure of KCG's confidential and proprietary trade secrets to the public or its competitors would allow KCG's competitors to unfairly compete with it, and destroy the commercial value of any such models. Specifically, in the highly competitive industry in which KCG operates, the disclosure of its Predictors would allow a competitor to unfairly compete with KCG.

71.     The loss of its confidential and proprietary trade secret information would subject KCG to continuing irreparable harm, and KCG has no adequate remedy at law for Li's breaches of the Employment Agreement.  Unless injunctive relief is granted to address Li's actions, KCG will continue to be without "an adequate remedy solely at law and would suffer irreparable harm[.]" *See* Ex. A at 8-9, ¶ 13(c).

72.     KCG therefore requests that this Court grant injunctive relief against Li permanently prohibiting both him from using and/or disclosing KCG's trade secrets, including all of KCG's trade secrets sent to his personal email accounts, ordering Li to return all of KCG's trade secrets in his possession, custody, or control to KCG, and enjoining Li from engaging in the conduct set forth in Paragraph 3 of the WHEREFORE clause at the conclusion of this Complaint.

73.     Finally, KCG is entitled to recover its attorneys' fees and costs from Li as a result of his breaches of his KCG Employment Agreement.  *See* Ex. A at 9, ¶ 13(d) ("If I am found to

be in breach or default in the full or timely performance of any of my covenants, duties or obligations as set forth in this Agreement, I will be liable for, and agree to promptly pay to KCG upon demand, all of the costs and expenses KCG incurs as a result of or arising from such breach or default, including reasonable attorneys' fees and expenses and court costs.").

## COUNT IV
### (Misappropriation of Trade Secrets)
### (N.J.S.A. § 56:15 *et seq.*)

74.    KCG repeats and re-alleges each and every allegation contained in paragraphs 1 through 73 of the Complaint, as if fully set forth herein.

75.    During the course of his employment at KCG and in order to perform his duties on behalf of KCG, Li was granted access to KCG's confidential and proprietary information.

76.    Li had access to: financial, business, employee, technical, economic, engineering and design information, plans and strategies, forecasts, know-how, systems, processes, software, algorithms, mathematical models, valuation models, trading models or strategies, information relating to modeling relationships among interest rate market instruments, trading and hedging strategies and paradigms, firmware, trading technologies, the use of trading platform software (including all front-end, middleware and exchange connectivity components or subsystems and analysis and conclusions related to KCG's technology), proprietary computer code, and computer and network hardware and configurations.

77.    This information is not available to the general public and is closely guarded by KCG.    KCG keeps such information strictly confidential in order to protect its customers' privacy and to maintain an advantage in the highly competitive high frequency trading business.

78.    This information is considered a trade secret under the New Jersey Trade Secrets Act because KCG derives an advantage over its competitors from the information, the

information is not known outside of KCG, KCG has expended considerable amounts of money in developing the information, the information derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy. N.J.S.A. § 56:15-2.

79.    This information has been continually used in KCG's business, and is currently being used in KCG's business.

80.    The economic value of the KCG trade secrets/confidential information Li had access to under his Employment Agreement is substantial.

81.    The information improperly and illegally accessed, reviewed and copied by Li constitute protectable trade secrets under the New Jersey Trade Secrets Act. N.J.S.A. § 56:15-2.

82.    Li misappropriated KCG trade secrets when he used them by (1) improperly acquiring KCG's confidential trade secret information by accessing KCG's confidential trade secret information and subsequently reviewing and copying KCG's confidential trade secret information onto his personal directory in breach of the confidentiality obligations in his Employment Agreement and in violation of KCG policy and procedures and (2) using KCG confidential trade secret information to enhance his employment prospects at a KCG competitor, and/or to enhance the compensation that a KCG competitor would offer or did offer to him. N.J.S.A. § 56:15-2.

83.    At the time Li (1) accessed KCG's confidential trade secret information and subsequently reviewed and copied KCG's confidential trade secret information onto his personal directory and (2) used KCG confidential trade secret information to enhance his employment prospects at a KCG competitor, Li knew, or had reason to know, that he acquired knowledge of

KCG's confidential trade secret information through improper means.  Specifically, Li knew, or had reason to know, that he did not have authorized access to KCG's confidential trade secret information and that he had a duty (either implied or as provided under his Employment Agreement and KCG policy and procedures) to maintain the secrecy and limit the use of KCG's confidential trade secret information. N.J.S.A. § 56:15-2.  Such knowledge is evidenced by the actions that Li took to conceal his accessing and copying of KCG's confidential Predictors.

84.    Under the New Jersey Trade Secrets Act, this Court may grant injunctive relief to prevent any actual or threatened misappropriation of trade secrets. N.J.S.A. § 56:15-3.

85.    Li's illegal and wrongful accessing, reviewing and copying of KCG's confidential information, combined with his attempts to conceal his activities and his meeting with KCG's competitor, constitutes the "threatened" misuse of KCG trade secrets.  Permanent injunctive relief is therefore appropriate.

86.    Additionally, it is inevitable that Li will use KCG's highly confidential information and trade secrets based on his knowledge and misappropriation of them as described herein. Li has already met with one of KCG's competitors, and upon information and belief is actively seeking employment with KCG's other competitors, at which the knowledge about KCG's highly confidential information and trade secrets that he purloined from KCG will inevitably be used by him to his and his new employer's advantage.

87.    Accordingly, KCG requests that this Court enter an order permanently enjoining Li from using any KCG confidential information, and from disclosing KCG confidential information to anyone not authorized to receive the confidential information and enjoining Li from engaging in the conduct set forth in Paragraph 3 of the WHEREFORE clause at the conclusion of this Complaint.

88.     KCG also requests that this Court enter an order requiring Li to return any and all KCG confidential information to KCG.

89.     KCG further requests an award of compensatory damages, attorneys' fees pursuant to Li's employment agreement, and punitive damages because Li's misappropriation of KCG trade secrets was willful and malicious.

**Count V**
**(Violation of Computer Fraud and Abuse Act)**
**(18 U.S.C. § 1030)**

90.     KCG repeats and re-alleges each and every allegation contained in paragraphs 1 through 89 of the Complaint, as if fully set forth herein.

91.     Li knowingly and intentionally accessed KCG's computers without authorization or in excess of his authorization.

92.     At the time Li was hired by KCG, he specifically acknowledged, as evidenced by his signature to his Employment Agreement that: "KCG is engaged in a diverse and evolving business and that the protection of its confidential information, competitive advantages and intellectual property is critical for its collective success and the stability of KCG's workforce." *See* Ex. A at ¶ 1(a). Furthermore, he acknowledged in the same agreement that: "KCG has expended considerable efforts and costs to develop its Confidential Information and other intellectual property, and to keep that information secret." *See* Ex. A at ¶ 1(d).

93.     Li also explicitly agreed, by signing the Employment Agreement, not to access any files, other than as authorized to perform his job duties, without clearance from KCG. *See* Ex. A at ¶ 11(b) ("I will not use a code, access a file or retrieve any stored communication, other than as authorized by KCG to perform my job duties, without prior clearance from KCG.").

94.     Furthermore, Li, as a sophisticated quantitative analyst with years of experience in the industry, is aware of the restrictions surrounding trade secrets and proprietary information, and the limits on authorized access to such information within companies.

95.     By accessing and searching the personal directories of other KCG employees to identify proprietary trading models created by other KCG employees, which he was not authorized to access, Li improperly and illegally accessed, reviewed and copied proprietary trading models created by other KCG employees that he had no right or authorization to access. He did this notwithstanding his awareness of KCG policy and procedures regarding unauthorized access to information.

96.     Li's unauthorized access of KCG's computers was for the purpose of acquiring information, including trade secrets such as Predictors, from those computers, for his own personal gain and/or for the benefit of competitors of KCG.

97.     In response to learning of the unauthorized access by Li of trade secrets, including Predictors hosted on the KCG computers, KCG was compelled to conduct an investigation using internal and external resources regarding this unauthorized access – an investigation that has already revealed Li's cover-up efforts described above. This investigation and remediation utilized and continues to utilize significant KCG resources, including the cost of investigation and remediation and the time and attention of senior executives.

98.     As a result of the unauthorized access and abuse of its computer network, including the subsequent investigation and remediation, KCG was damaged by Li's actions in an amount to be proven at trial that is well in excess of $5,000.

99.     The KCG computers accessed by Li are "protected computers" engaged in and affecting interstate commerce.

100.    KCG also requests that this Court grant permanent injunctive relief against Li prohibiting both him from using and/or disclosing KCG's trade secrets and ordering Li to return all of KCG's trade secrets in his or his agents' possession, custody, or control to KCG; and grant injunctive relief against Li prohibiting him from engaging in the conduct set forth in Paragraph 3 of the WHEREFORE clause at the conclusion of this Complaint

**WHEREFORE**, Plaintiffs Virtu Americas LLC and Virtu KCG Holdings, Inc. respectfully request that this Court:

1.    Enter an Order permanently enjoining Defendant Li, and all persons and/or entities acting on his behalf, for his benefit, or in active concert or participation with him (including any agents, representatives, associates and/or employees), from disclosing any of KCG's trade secrets or other confidential or proprietary information to anyone not authorized to receive it;

2.    Enter an Order permanently enjoining Defendant Li, and all persons and/or entities acting on his behalf, for his benefit, or in active concert or participation with him (including any agents, representatives, associates and/or employees), from using, possessing, or having access to KCG's confidential and proprietary information;

3.    Enter an Order permanently enjoining Defendant Li, and all persons and/or entities acting on his behalf, for his benefit, or in active concert or participation with him (including any agents, representatives, associates and/or employees) from developing, creating or devising models that (1) models that use the imbalance of unexecuted orders residing on exchange order books as inputs for making forecasts (2) models that  use executed trade imbalances between buy

initiated and sell initiated trades; (3) models that use market momentum, i.e. a series of trades at either increasing prices or decreasing prices, for making forecasts; (4) models that use lead lag relationships between correlated securities for making forecasts; (5) models that use unscheduled news events for making forecasts; and (6) models that use executed trades that result from "dark" liquidity, *i.e.*, trades that occur on exchanges that are the result of "hidden" order that are not observable on exchange order book feeds and or from trades occurring on trading systems that do not display orders, also known as dark pools, for his own use or use by any competitors of KCG to engage in market making activities, and enjoining KCG's competitors engaged in market making activities from employing Defendant to develop or supervise persons developing such models described herein to engage in market making activities.

4.    Enter an Order requiring Defendant Li to immediately return all of KCG's confidential trade secret information in his possession, custody or control to KCG;

5.    Award KCG monetary damages resulting from Defendant Li's breaches of his Employment Agreement, and the costs and expenses, including reasonable attorneys' fees, that KCG incurs as a result of Defendant Li's breaches of his employment agreement;

6.    Award KCG a reasonable royalty for Defendant Li's misappropriation of KCG's highly confidential information and trade secrets;

7.    Award KCG the costs and expenses that KCG incurred in connection with its investigation and remediation of Defendant Li's violation of the Computer Fraud and Abuse Act;

8.    Award KCG all other monetary damages requested herein; and

9.    Award KCG such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated: October 13, 2017
Newark, New Jersey

By: s/ Kevin G. Walsh
Kevin G. Walsh, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4769
Fax: (973) 639-6470
kwalsh@gibbonslaw.com

William F. Dugan, Esq.
(*pro hac vice* application to be filed)
Miriam Geraghty Petrillo, Esq.
(*pro hac vice* application to be filed)
**BAKER & MCKENZIE LLP**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Tel: (312) 861-8000
Fax: (312) 861-2899
William.Dugan@bakermckenzie.com
Miriam.Petrillo@bakermckenzie.com

*Attorneys for Plaintiffs*
*Virtu KCG Holdings LLC and Virtu*
*Americas LLC*