UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIRTU KCG HOLDINGS LLC, and VIRTU AMERICAS LLC, | Civil Action No. 17-8296 (SDW)(CLW) |
| Plaintiffs, | |
| v. | **OPINION** |
| MIN LI, | |
| Defendant. | February 6, 2018 |

**WIGENTON**, District Judge.

Before this Court is Defendant Min Li's ("Li" or "Defendant") Motion to Stay and Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and the New Jersey Uniform Arbitration Act, N.J. Stat. Ann. § 2A:23B-1 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** Defendant's motion.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On or about December 19, 2013, Defendant was hired as a Vice President, Quantitative Strategist for KCG Americas LLC ("KCG").[1] (Compl. ¶ 16, ECF No. 1.) "KCG engages in

---

[1] The parties indicated in their respective briefs that Defendant was employed by KCG Americas LLC. However, annexed to the Complaint is a copy of Defendant's employment agreement with Knight Capital Americas LLC rather than KCG Americas LLC. (Compl. Ex. A, ECF No. 1-1.) According to the agreement, Knight Capital

proprietary algorithmic trading and electronic market making." (*Id.* ¶ 11.) As a Quantitative Strategist, Defendant was responsible for developing and refining KCG's "Predictors," which are "mathematical models that use information to, *inter alia*, forecast price movements in the markets[.]" (*Id.* ¶¶ 27-28.) On or about January 15, 2014, Defendant executed an employment agreement (the "Agreement") with KCG, which included confidentiality and dispute resolution provisions. (*Id.* ¶ 16, Ex. A.) In or about April 2017, during the company's investigation into the theft of trade secrets, KCG allegedly discovered that Defendant had "improperly accessed and copied Predictors written by other KCG employees" into his personal directory on KCG servers. (*Id.* ¶¶ 33-36.) On April 27, 2017, KCG placed Defendant on paid administrative leave; and on July 5, 2017, Defendant's employment was terminated. (*Id.* ¶ 38.)

The successors to KCG, Plaintiffs Virtu KCG Holdings LLC and Virtu Americas LLC (collectively, "Plaintiffs"),[2] filed a five-count suit against Defendant on October 13, 2017 alleging violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832 (Counts I and II); breach of contract (Count III); misappropriation of trade secrets, N.J. Stat. Ann. § 56:15 *et seq.* (Count IV); and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count V).[3] (*See generally* Compl.) On November 22, 2017, Defendant filed the instant Motion to Stay and Compel Arbitration. (ECF No. 18.) Plaintiffs filed their opposition on December 19, 2017, and Defendant replied on December 26, 2017. (ECF Nos. 24-25.)

---

Americas LLC's indirect parent is KCG Holdings, Inc. (*Id.* at 1.) For the purposes of this Opinion, KCG Americas LLC and KCG Holdings, Inc. will be referred to as "KCG."
[2] On or about July 20, 2017, KCG Holdings, Inc. merged with and into a subsidiary of Virtu Financial, Inc. (*Id.* ¶ 3.) The surviving entity was renamed Virtu KCG Holdings LLC. (*Id.*) As a result of the merger, KCG Americas LLC was renamed Virtu Americas LLC. (*Id.* ¶ 5.)
[3] A certification attached to the Complaint disclosed that Plaintiff Virtu Americas LLC and Defendant are already parties to a pending FINRA arbitration, *Min Xing Li v. Virtu Americas LLC*, No. 17-02155. (Walsh Certification, Oct. 13, 2017, ECF No. 1-4.)

## II. LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), "a clause in an employment contract evidencing an intent to arbitrate disputes arising from that contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Townsend v. Pinnacle Entm't, Inc.*, 457 F. App'x 205, 207 (3d Cir. 2012) (quoting 9 U.S.C. § 2). Courts are authorized to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Additionally, under § 3 of the FAA, parties may "apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3). The New Jersey Uniform Arbitration Act ("NJUAA") contains provisions similar to those found in the FAA. *See* N.J. Stat. Ann. § 2A:23B-6(a) (state analogue to § 2 of the FAA); N.J. Stat. Ann. § 2A:23B–7 (addressing applications to stay court proceedings and compel arbitration, similar to §§ 3 and 4 of the FAA).

The FAA and NJUAA reflect federal and state policies favoring arbitration. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345 (2011) ("[T]he FAA was designed to promote arbitration."); *Hojnowski v. Vans Skate Park*, 901 A.2d 381, 392 (N.J. 2006) (noting that the NJUAA codified the State Legislature's endorsement of arbitration agreements). Notwithstanding those policies, "[a]rbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Ranieri v. Banco Santander, S.A.*, No. 15-3740, 2017 WL 374468, at *3 (D.N.J. Jan. 25, 2017) (quoting *Bel-Ray Co., Inc. v. Chemrite (PTY) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)).

When deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir. 2014) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). To conduct this inquiry, the court shall apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

In determining whether a valid arbitration agreement exists, a court must first decide whether to use the Federal Rule of Civil Procedure ("Rule") 12(b)(6) or Rule 56 standard. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard applies when arbitrability is "apparent, based on the face of a complaint, and documents relied upon in the complaint[.]" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) ("*Guidotti I*"). However,

> [w]here the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record.

*Noonan v. Comcast Corp*, 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 639 F. App'x 824, 826-27 (3d Cir. 2016) ("*Guidotti II*")). "In such circumstances, the motion should be adjudicated under the Rule 56 standard for summary judgment." *Id.*

## III. DISCUSSION

As a threshold matter, this Court will apply the Rule 12(b)(6) standard in deciding the instant motion because Defendant moves based on the "Dispute Resolution" provision of the Agreement, which is attached to the Complaint. *See Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017) (clarifying *Guidotti I*, and explaining that the Rule 12(b)(6) standard applies "if a party moves to compel arbitration based on an authentic arbitration agreement that is attached to the complaint"); *see also Noonan*, 2017 WL 4799795, at *4; *Sanford*, 618 F. App'x at 118.

A. <u>Validity of Arbitration Agreement</u>

An arbitration agreement is valid and enforceable under New Jersey law where it "clearly" and "unambiguously" puts the parties on notice of their rights and their "intent to surrender those rights." *Noren v. Heartland Payment Sys., Inc.*, 154 A.3d 178, 183 (N.J. Super. Ct. App. Div. 2017) (noting that "[n]o magical language is required to accomplish a waiver of rights" so long as the waiver is set out in "plain language that would be clear and understandable to the average" person).

Here, the preamble of the Agreement provides that the parties agree to the provisions therein "[f]or good and sufficient consideration, and in exchange for being given employment, certain monies, benefits, training and access to KCG confidential information and business relationships that [Defendant] would not receive or have access to but for [his] employment with KCG[.]" (Compl. Ex. A at 1.) Section 12 of the Agreement clearly and unambiguously reflects the parties' intent to arbitrate, mediate, and/or litigate certain matters. (*Id.* at 7.) Specifically, the provision begins:

> Dispute Resolution - If applicable regulations of FINRA[4] . . . impose mandatory arbitration procedures,[5] KCG and I will comply with those other arbitration procedures instead of the other provisions of this Section 12. In the absence of another dispute resolution procedure that mandatorily applies, KCG and I agree to the following dispute resolution procedures as the exclusive method of resolving any claim, controversy or dispute of any nature . . . including all statutory, contractual, and common law claims . . . .

(*Id.*) "[C]ourts have held that the creation of an employment relationship . . . is sufficient consideration to uphold an arbitration agreement contained in an employment application." *Descafano v. BJ's Wholesale Club, Inc.*, No. 15-7883, 2016 WL 1718677, at *2 (D.N.J. Apr. 28, 2016) (quoting *Martindale v. Sandvik*, 800 A.2d 872, 879 (N.J. 2002)). Thus, this Court finds that the Defendant and Plaintiffs' predecessors entered into a valid agreement to arbitrate certain disputes.

B. Scope of Arbitration Agreement

Having found that a valid arbitration agreement exists, this Court will next address whether the dispute at issue falls within the scope of the parties' agreement to arbitrate. Plaintiffs' Complaint alleges that Defendant violated the Agreement by "improperly and illegally" accessing, using, reviewing and/or copying KCG's proprietary trading models. (Compl. ¶ 1.) Pursuant to Section 12(d)(ii) of the Agreement, the parties may litigate disputes pertaining to the Agreement's restrictive covenants, including those concerning "Confidentiality" (Section 9) and "Access to and Retrieval of KCG Property" (Section 11).[6] (Compl. Ex. A at 8.) In addition, the Agreement instructs:

---

[4] The Agreement's references to "FINRA" are understood to stand for the self-regulatory organization "Financial Industry Regulatory Authority."
[5] FINRA's Code of Arbitration Procedure ("Code") mandates arbitration of a dispute if it "arises out of the business activities of a member or an associated person and is between or among" members, members and associated persons, or associated persons. Code § 13200.
[6] Section 12(d)(ii) provides that if a dispute is subject to Sections 6, 7, 8, 9, 10 or 11 of the Agreement, "then either party may file a lawsuit as provided in any State or Federal court located in the State of New Jersey and the Parties

> With respect to 12(d)(ii) and any applicable regulation of FINRA . . . that imposes mandatory arbitration, KCG or I may file a lawsuit seeking a temporary restraining order, a preliminary or permanent injunction, or other equitable relief or provisional remedies for any violation of Sections 6, 7, 8, 9, 10 or 11 without waiving the right to compel the dispute resolution procedures stated in Section 12 and the parties agree not to defend against any application for equitable or provisional relief on the ground that any meetings, mediation or arbitration is pending.

(*Id*. at 8.) Thus, Section 12(d)(ii) of the Agreement specifically creates an exception to the agreement to arbitrate. "An agreement to arbitrate, like any other contract, must be the product of mutual assent . . . . Parties are not required to arbitrate when they have not agreed to do so." *See Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014) (internal citations and quotation marks omitted). Because Plaintiffs' claims relate to the alleged misuse of confidential and proprietary information, pursuant to the terms of their Agreement, the parties may continue to litigate their dispute.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Stay and to Compel Arbitration is **DENIED**.[7] An appropriate order follows.

/s/ Susan D. Wigenton
SUSAN D. WIGENTON, U.S.D.J.

cc: Clerk
Parties
Magistrate Cathy L. Waldor

---

each consent to the jurisdiction of those courts and agree that venue there is proper and is the only venue for the Dispute." (Compl. Ex. A at 8.)

[7] Although the parties will not be compelled to arbitrate their dispute, this Court will briefly address Plaintiff Virtu KCG Holdings LLC's argument that it cannot be compelled to arbitrate because it is not a "member" of FINRA. Plaintiff Virtu KCG Holdings LLC could be compelled to arbitrate because it is a successor to KCG, which was the FINRA-member company that hired and employed Defendant. Furthermore, "courts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001).